UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HENRY BETHUNE #500130 | No. 08-14412 |
| Plaintiff, | District Judge Marianne O. Battani |
| v. | Magistrate Judge R. Steven Whalen |
| MARY BERGHUIS, *et al.,* | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Before the Court is *Defendants' Motion for Summary Judgment* [Docket #17] by Mary Berghuis, Patricia Caruso, Rick Smith, Brian Evans, Jay Cregg, Michael Wilkinson, Renee VanHouten and Judy Gracik, filed on January 30, 2009. The motion has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendants' motion be GRANTED, and the Complaint dismissed as to these Defendants.

**I. FACTUAL BACKGROUND**

Plaintiff, an Michigan Department of Corrections ("MDOC") inmate was housed at the Earnest C. Brooks Correctional Facility ("LRF") at the time of the events in question. He alleges that on the morning of March 12, 2007 while returning to his housing unit from the chow hall, his back and legs froze up, causing him to fall to the ground. *Complaint,* ¶1.

Defendant Cregg, an MDOC sergeant, along with other correction officers came to Plaintiff's location, notifying medical services by two-way radio that Plaintiff had fallen. *Id.* Officers on the scene were directed by an "unidentified nurse" to bring Plaintiff to health services. *Id.* Plaintiff alleges that officers first attempted to place him in a wheelchair, but upon seeing that he was not able to sit upright, transported Plaintiff to the medical clinic using a food services cart. *Id.* at ¶3. He was examined by a nurse, later identified as Defendant VanHouten, who after examining him, told Defendants Cregg and Evans (an MDOC captain) that Plaintiff was faking illness. *Id.* Defendants Cregg and Evans then ordered Plaintiff to return to his housing unit. *Id.* Plaintiff alleges that upon informing Defendants Evans and Gregg that he was unable to move, he was taken via the food services cart to segregation for disobeying a direct order. *Id.* at ¶4. Plaintiff claims that when physician's assistant Defendant Daniel Spitters visited him later the same day in his segregation cell, the PA found Plaintiff on the floor of the cell, lying in his own urine. *Id.* Plaintiff alleges that he had laid thus for "approximately 5-7 hours" before being lifted from the floor by Jones, a non-defendant MDOC officer. *Id.* Plaintiff alleges that "due to the combination of . . . excruciating pain, discomfort and . . . medication," he "lacked knowledge to comprehend realistically pretty much everything which was transpiring" for the next four to five days. *Id.* at ¶5. On the fifth day of his segregation, he alleges that he was visited by Defendant Smith, LRF's deputy warden, Defendant Spitters, and a psychologist. *Id.* at ¶6. Plaintiff agreed to sign a document releasing MDOC from responsibility for his failure to consume food or water for the duration of his segregation (Plaintiff denies that he went on a hunger

-2-

strike, ¶5, *supra*) in return for the dropping of the majority of misconduct tickets written against him. *Id.* at ¶6. Plaintiff states that he "was released back to [the] general population after a unified consensus was reached." *Id.*

Plaintiff alleges that since 2005, various MDOC medical care providers have withheld adequate treatment for his long-term back problems. *Id.* at 8. He denies that he ever "refused medical care, treatments, evaluation or examination [or] rationally failed to cooperate with any medical profession[als.]" *Id.* Apparently acknowledging that on occasions he became "unruly," Plaintiff contends that it was "a normal reaction" to being told that he was "faking" illness. *Id.* at pg. 9. Plaintiff, noting that in May, 2007, an MRI was performed showing a disc herniation, alleges that the neurosurgeon reviewing the study told Plaintiff "it was astonishing and a miracle [he] could still walk because" his condition "normally result[ed] in physical immobility." *Id.* Plaintiff admits that following the MRI and diagnosis he was transferred to a different MDOC facility so he could attend physical therapy on a regular basis. *Id.* Plaintiff underwent a disc fusion at L5-S1 on March 25, 2008. *Docket #17,* Exhibit C.

Plaintiff alleges that Defendant Caruso is liable for his injuries in her capacity as the Director of the MDOC. *Complaint* at pgs. 4-5. Likewise, he alleges that various LRF staff including Defendants Warden Berghuis, Deputy Warden Smith, Captain Evans, Corrections Officer Cregg, Wilkinson, RN, VanHouten, RN, and Gracik, Health Unit Manager ("HUM")

are liable for the Eighth Amendment violations.[1]  *Id.* at pg. 5.  He requests monetary damages for pain, stress, mental abuse, and emotional anguish as well as injunctive relief.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

---

[1] Defendant Spitters was not a party to this motion.

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

#### A. Official Capacity Claims

Defendants argue first that claims against them in their official capacity are barred by the Eleventh Amendment. *Defendants' Brief,* 7-8. I agree. Generally, claims against defendants in their *official* capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).   Hence, claims for monetary damages against Defendants in their official capacities are barred.

However, "[Eleventh Amendment] immunity does not apply if the lawsuit is filed

against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Plaintiff's requests for injunctive relief would arguably preserve his official capacity claims. The proposed injunctive relief consists of prohibiting Defendant Bethune from interfering with his First Amendment access to the courts rights, "retaining" his legal materials, and denying his "meaningful right" to future medical treatment. *Complaint* at 10-11. Plaintiff, however, makes no showing that any of the Defendants have sought to deny his right to access the courts or future medical treatment. Plaintiff has done nothing more than offer his belief that at some unspecified time in the future, the Defendants *might* take some action that *may* infringe on his constitutional rights. The law is clear that injunctive relief should not issue where the claimed future damage is speculative or may never occur. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003). The fact that the injunctive requests are wholly dismissible defeats Plaintiff's claims against Defendants in their official capacities.

### B. Lack of Personal Involvement by Defendants Caruso, Berghuis, and Smith

Defendants argue next that because Plaintiff failed to allege personal involvement by Defendants Caruso, the Director of MDOC, Berghuis, LRF's Warden, and Deputy Warden Smith, these Defendants should be dismissed. *Defendants' Brief* at 8-9.

Contrary to the denial of *any* personal involvement by these Defendants, Plaintiff alleges that on the fifth day of his segregation, Defendant Smith, along with Defendant

-6-

Spitters and an unnamed psychologist, appeared at his cell, asking Plaintiff to release the MDOC from liability (regarding Plaintiff's alleged hunger strike) in return for the dismissal of several misconduct tickets. *Complaint* at 4. However, the incident as described in the Complaint does not contain an allegation against Smith. To the contrary, Plaintiff indicates that he was amenable to the proposed deal, stating that he "was released back to [the] general population after a unified consensus." *Id.* The reference to Smith's brief involvement in Plaintiff's release from segregation does not state a claim of a constitutional violation.

In regard to Plaintiff's claim of "supervisory" liability by these Defendants, the Supreme Court has specifically held that in a §1983 action, liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Aside from the single reference to Smith's role in his release from segregation, Plaintiff makes no allegations of personal involvement by these Defendants. Because Plaintiff cannot make the threshold showing that these individuals impliedly authorized, approved or knowingly acquiesced in the alleged Eighth Amendment violations, the supervisory claims should be dismissed. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

### C. Qualified Immunity

Finally, Defendants argue that qualified immunity bars the claims against them in their personal capacities. *Defendants' Brief,* 9-14.

Under the doctrine of qualified immunity, "'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). There are generally two inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). More recently "the Supreme Court reconsidered the sequential inquiry set forth in *Saucier*, "concluding that, 'while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.'" *Moldowan v. City of Warren*, — F. 3d — 2009 WL 2176640, at *13 (6th Cir. 2009)(*citing Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808 (2009)).

### 1. The Alleged Constitutional Violations

Plaintiff alleges that Defendants violated (1) his equal protection rights under the Fourteenth Amendment (2) his "liberty interests" (3) the Eight Amendment (4) the First Amendment and finally, that Defendants formed a "civil conspiracy" against him. *Complaint* at 1. However, the Complaint does not include factual allegations supporting the claims of equal protection, substantive due process, First Amendment violations, or a civil conspiracy. Plaintiff's factual allegations, dealing exclusively with inadequate and/or

delayed medical treatment are construed as Eighth Amendment claims.

Under the Eighth and Fourteenth Amendments, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).  However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976).  *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle, supra*, 429 U.S. 105-106, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

Subsequent to the events of March 12-17, 2007, imaging studies showed that Plaintiff experienced a herniated disc. Plaintiff has therefore met the objective prong of *Farmer*. However, in examining his allegations and accompanying evidence in the light most favorable to him, he cannot show that Defendants perceived, then disregarded a substantial risk to his well-being.

### a. Defendants Cregg, VanHouten, and Evans

Defendant Cregg, a corrections officer, states that he came on the scene after he observed Plaintiff "gently place[] himself on the ground. *Docket #17,* Exhibit A, ¶3. After Plaintiff stated that he had hurt his back and could not walk, Cregg states that he "radioed health services," receiving the response that Plaintiff should be "transported to Health Services for evaluation and treatment." *Id.* Cregg states that he procured a wheelchair, but Plaintiff "was uncooperative . . . acting as dead weight when staff attempted to place him in the wheelchair." *Id.* Cregg then procured a flat bed cart, placed Plaintiff on the cart, and transported him to Health Services. *Id.*

Plaintiff does not dispute that Cregg (1) came to his aid after observing that he had fallen (2) radioed for medical assistance (3) procured a wheelchair, then later, a flat bed cart (4) transported him Plaintiff to Health Services. While Plaintiff alleges that Cregg behaved "callous[ly]" while attempting to transport him to Health Services, he does not allege that he attempted to delay or withhold treatment from Plaintiff. As such, claims against Cregg are subject to dismissal.

Upon Plaintiff's arrival at Health Services, Defendant VanHouten examined Plaintiff, noting that Plaintiff "resisted" when she and other staff members tried to help him sit up. *Id.,* Exhibit B, ¶4. VanHouten testified that Plaintiff "was selective regarding what questions he would respond to," but she nonetheless took his vital signs and "pulses in the lower extremities." *Id.* She denies remembering that any staff members present said that Plaintiff was faking his discomfort. *Id.* Apparently unable to find a explanation for Plaintiff's symptoms, she states that after Plaintiff was examined, he was ordered to return to his housing unit by Defendant Evans. *Id.* at ¶5. She states that Plaintiff was taken to segregation after refusing to comply with Evan's order. *Id.* VanHouten refutes Plaintiff's claim that he was unable to move from the floor of his segregation cell, forcing him to sit in his own urine for five to seven hours. *Id.* Despite Plaintiff's assertion he was unable to move his arms or legs, VanHouten notes that Plaintiff "was witnessed slapping his hands on the segregation floor and used resistance when we attempted to move his legs in the clinic." *Id.* She also states that on the fourth day of Plaintiff's segregation, he informed another nurse that "he would eat when he wanted to," noting that he occasionally fasted for three to four days at a time. *Id.* at ¶7.

VanHouten also refutes Plaintiff's claim that he received substandard medical care prior to the March 12, 2007 incident. Citing Plaintiff's treating notes, she found that at a May, 2005 appointment, Plaintiff exhibited a "normal and rapid gait" noting further that during an November, 2005 examination following an injury, Plaintiff admitted that he was

non-compliant in taking prescribed medication. *Id.* ¶¶10-11; *see also,* Exhibit C. The following month, staff members observed that while Plaintiff exhibited "a marked limp" during an examination at which he asked for a bottom bunk, "he was observed walking outside . . . with . . . . no limp. *Id.* at ¶13. She noted that January, 2007 treating records state that Plaintiff admitted faking a medical emergency for the purpose of being "sent to the emergency room to be evaluated for his back pain." *Id.* at ¶16.

Plaintiff does not dispute that upon reaching the Health Clinic that he was examined by VanHouten. While Plaintiff characterized the examination as "more of a visual than . . . . physical examination," he does not dispute VanHouten's account that she took his vital signs and lower extremity pulses. Even assuming for argument's sake that VanHouten's conclusion that Plaintiff was capable of returning to his housing unit amounted to medical negligence or malpractice, he cannot show that the nurse was deliberately indifferent his medical needs. *See Sanderfer*, *supra,* 62 F.3d at 154 (6th Cir. 1999).

Likewise, Plaintiff cannot show that Defendant Evans violated his Eight Amendment rights. Evan stated that he ordered Plaintiff to return to his housing unit because "[t]he nurse['s] evaluation led me to believe that prisoner Bethune was not being truthful about his pain and his ability to move or walk. Based on his uncooperativeness, we decided to place him in segregation for refusing to return to general population," noting that Plaintiff, placed in segregation at approximately 8:00 a.m., was still "uncooperative." *Id.* at ¶4. Evan's statement is supported by a non-defendant nurse's observation that shortly after being placed

in segregation, Plaintiff became agitated and used profanity when she offered medical assistance. *Docket #17,* Exhibit C at pg. 4 of 102.

Evan's also disputes Plaintiff's claim that he was forced to lie in his own waste for five to seven hours, stating that "Health Services continued to evaluate [Plaintiff] from the time he was placed in segregation." Further, Evans indicates that he, along with a nurse and another officer, entered Plaintiff's cell at approximately 11:35 a.m. - indicating that at most, Plaintiff lay on the floor for three and a half hours at most before staff intervened. *Id.* at ¶5. Evan also notes that Plaintiff got up on his bed at 12:00 p.m. and changed clothes, adding that Plaintiff also "had contact with psych services at least three times" between March 12 and 16, 2007. *Id.* Plaintiff does not refute (1) Evans segregation order was based on a nurse's assessment that Plaintiff was capable, but unwilling to walk back to his housing unit (2) Evans made timely checks into Plaintiff's status subsequent to issuing the order to place him in segregation. As such, he cannot show that Evans was deliberately indifferent to his condition.

### b. Defendants Wilkinson and Gracik

While Plaintiff lists Wilkinson among the individual Defendants, his factual allegations do not mention Wilkinson, a registered nurse stationed at LRF. While one treatment record attached to the Complaint shows that Defendant Wilkinson examined Plaintiff on May 20, 2007, Wilkinson's treating notes state only that Plaintiff would be placed on a special diet two days before undergoing a medical procedure. *Docket #1-2*, pg. 10 of 22. Because Plaintiff has failed to allege constitutional violations by Wilkinson, he

is entitled to dismissal.

Likewise, while Plaintiff includes Defendant Gracik, LRF's Health Unit Manager ("HUM") among the Defendants, the Complaint contains absolutely no factual allegations regarding this Defendant. Plaintiff's possible contention that Gracik is vicariously liable for the acts of her subordinates is insufficient to show a constitutional violation. *See* Section **B.,** *supra.*

Plaintiff's allegations of Eighth Amendment violations are further undermined by his treatment records. Plaintiff alleges that a neurosurgeon reviewing an MRI taken within weeks of his segregation stated that "it was . . . a miracle" Plaintiff could still walk. *Complaint* at ¶9. A review of Plaintiff's treating records for the period following his March, 2007 segregation confirm the presence of a disc herniation. However, they do not suggest that neurosurgeon Dr. Rawal was astonished that Plaintiff could continue to walk. *Docket #17,* Exhibit C at pgs. 89 of 102. In July, 2007, Dr. Rawal, acknowledging the disc herniation, recommended physical therapy, showing that he deemed Plaintiff capable of some level of physical activity. *Id.* Dr. Rawal noted that Plaintiff did "not appear to be in severe distress." *Id.* Further, the treating notes do not suggest that Plaintiff would be incapacitated without immediate surgical intervention. Although his condition was tracked by Dr. Rawal from July, 2007 forward, Plaintiff did not undergo a disc fusion until March, 2008.

Even medical records and grievance material attached to the Complaint stand at odds with Plaintiff's allegations of Eighth Amendment violations. Defendant VanHouten's March

12, 2007 treating notes indicate that Plaintiff refused to answer questions regarding his condition, but was able to articulate his complaints about the medical kiting process. *Docket #1* at pg. 45 of 50.  Although one of Plaintiff alleged in one of his grievances that he was "dragg[ed] . . . by the ankles" to segregation, both VanHouten's treating notes and the Complaint states that Plaintiff was taken to segregation by flat bed cart. *Complaint* at ¶5, *Docket #1* at pgs. 24, 45.  March 12, 2007 treating notes by physician's assistant Defendant Spitters indicate that Plaintiff was prescribed both Toradol and Flexeril for back pain within three hours of his placement in segregation. *Docket #1-2,* at pg. 4 of 22.

### 2. Clearly Established

As discussed above, Plaintiff cannot show a constitutional violation by these Defendants.  In the absence of a constitutional violation, the Court need not determine whether the right in question is clearly established. *Dunigan v. Noble,* 390 F.3d 486, 495 (6th Cir. 2004).

### IV.  CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Docket #17] be GRANTED, and the Complaint dismissed as to these Defendants.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                      s/R. Steven Whalen
                                                      R. STEVEN WHALEN
                                                      UNITED STATES MAGISTRATE JUDGE

Dated: August 14, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 14, 2009.

                                                       s/Susan Jefferson
                                                       Case Manager