UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY BETHUNE #500130                        No. 08-14412

             Plaintiff,                    District Judge Marianne O. Battani

v.                                            Magistrate Judge R. Steven Whalen

MARY BERGHUIS, *et al.,*

             Defendant.
_____ /

### REPORT AND RECOMMENDATION

Plaintiff  Henry Bethune, a prison inmate in the custody of the Michigan Department

of Corrections, filed a *pro se* complaint, naming Patricia Caruso, Mary Berghuis, Rick Smith,

Brian Evans, Jay Cregg, Daniel Spitters, Michael Wilkinson, Renee VanHouten, Judy

Gracik, and "Unknown" Correction officers, Medical Doctor(s), and Nurses.  *Complaint.*

The case was referred to me for all pretrial proceedings.  On August 18, 2009, a Report and

Recommendation was issued, recommending that the motion for summary judgment by

Defendants Mary Berghuis, Patricia Caruso, Rick Smith, Brian Evans, Jay Cregg, Michael

Wilkinson, Renee VanHouten and Judy Gracik [Docket #17] be granted.  *Docket #24.*

Adopting the Report and Recommendation on September 9, 2009, the Honorable

Marianne O. Battani dismissed these Defendants.  *Docket #25.*  For the reasons set forth

below, I recommend that the district court dismiss remaining Defendants Spitters,

"Unknown" Correction Officers, Medical Doctor(s), and Nurses *sua sponte* pursuant to 28

-1-

U.S.C. §1915(e)(2)(B).

## I.  PROCEDURAL AND FACTUAL BACKGROUND

This Court's August 14, 2009 Report and Recommendation's factual background, recently adopted by the Honorable Marianne O. Battani on September 9, 2009 [Docket #25] is restated as follows:

Plaintiff, an Michigan Department of Corrections ("MDOC") inmate was housed at the Earnest C. Brooks Correctional Facility ("LRF") at the time of the events in question. He alleges that on the morning of March 12, 2007, while returning to his housing unit from the chow hall, his back and legs froze up, causing him to fall to the ground.  *Complaint,* ¶1. Defendant Cregg, an MDOC Sergeant, along with other correction officers, came to Plaintiff's location, notifying medical services by two-way radio that Plaintiff had fallen.  *Id.* Officers on the scene  were directed by an "unidentified nurse" to bring Plaintiff to health services.  *Id.*  Plaintiff alleges that officers first attempted to place him in a wheelchair, but upon seeing that he was not able to sit upright, transported Plaintiff to the medical clinic using a food services cart.  *Id.* at ¶3.  He was examined by a nurse, later identified as Defendant VanHouten, who after examining him told Defendants Cregg and Evans (an MDOC captain) that Plaintiff was faking illness.  *Id.*  Defendants Cregg and Evans then ordered Plaintiff to return to his housing unit.  *Id.*   Plaintiff alleges that upon informing Defendants Evans and Gregg that he was unable to move, he was taken via the food services cart to segregation for disobeying a direct order.  *Id.* at ¶4.  Plaintiff claims that when physician's assistant Defendant Daniel Spitters visited him later the same day in his

segregation cell, he found Plaintiff on the floor of the cell, lying in his own urine.  *Id.*
Plaintiff alleges that he had laid thusly for "approximately 5-7 hours" before being lifted
from the floor by Jones, a non-defendant MDOC officer.  *Id.*  Plaintiff alleges that "due to
the combination of . . excruciating pain, discomfort and . . . medication," he "lacked
knowledge to comprehend realistically pretty much everything which was transpiring" for
the next four to five days.  *Id.* at ¶5. He alleges that on the fifth day of his segregation, he was
visited by Defendant Smith, LRF's deputy warden, Defendant Spitters, and a psychologist.
*Id.*  at ¶6.  Plaintiff agreed to sign a document releasing MDOC from responsibility for his
failure to consume food or water for the duration of his segregation (Plaintiff denies that he
went on a hunger strike, ¶5, *supra*) in return for the dropping of the majority of misconduct
tickets written against him.  *Id.* at ¶6.  Plaintiff states that he "was released back to [the]
general population after a unified consensus was reached."  *Id.*

Plaintiff alleges that since 2005, various MDOC medical care providers have withheld
adequate treatment for his long-term back problems.  *Id.*  at 8.  He denies that he ever
"refused medical care, treatments, evaluation or examination [or] rationally failed to
cooperate with any medical profession[als.]" *Id.*  Apparently acknowledging that on occasion
he became "unruly," Plaintiff contends that it was "a normal reaction" to being told that he
was "faking" illness.  *Id.* at pg. 9.   Plaintiff, noting that in May, 2007, an MRI was
performed showing a disc herniation, alleges that the neurosurgeon reviewing the study told
Plaintiff "it was astonishing and a miracle [he] could still walk because" his condition
"normally result[ed] in physical immobility." *Id.*   Plaintiff admits that following the MRI

-3-

and diagnosis he was transferred to a different MDOC facility so he could attend physical therapy on a regular basis. *Id.* Plaintiff underwent a disc fusion at L5-S1 on March 25, 2008. *Docket #17,* Exhibit C.

Plaintiff alleges that Defendant Spitters and unidentified corrections officers, medical doctor(s), and nurses, as well as now-dismissed Defendants Berghuis, Smith, Evans, Cregg, Wilkinson, VanHouten, and Gracik are liable for the Eighth Amendment violations. *Id.* at pg. 5. He requests monetary damages for pain, stress, mental abuse, and emotional anguish as well as injunctive relief.

## II.    LEGAL STANDARD FOR DISMISSAL

On December 1, 2008 Plaintiff was granted leave to proceed *in forma pauperis* ("IFP"). As an IFP filing, this complaint is subject to screening under 28 U.S.C. §1915(e)(2)(B), which provides that "the court *shall* dismiss the case at any time if the court determines that the action or appeal (i) is frivolous or malicious; or (ii) fails to state a claim on which relief maybe granted." (Emphasis added). *See also Ashcroft v. Iqbal*, _U.S._, 129 S.Ct. 1937. 1950,_L.Ed.2d_ (2009) (Factual allegations must show a "plausible" claim for relief).

## III.  ANALYSIS[1]

---

[1] Although Plaintiff alleges violations of his First and Eight Amendment rights as well as Fourteenth Amendment equal protection rights and "liberty interests," this Court previously found as follows:

### A. Personal Capacity Claims

### 1. Claims Against "Unknown Defendants" Should be Dismissed

#### a. Unnamed Officers

Paragraph two of the Complaint alleges that after Plaintiff fell to the ground, "Officer[] Braxton [and] other unidentified [o]fficers, along with Sergeant Cregg were [among] the the first to the location."  *Complaint* at ¶2.

This Court's previous findings regarding Plaintiff's fall, adopted by the District Court, are stated as follows:

> "Defendant Cregg, a corrections officer, states that he came on the scene after he observed Plaintiff "gently place[] himself on the ground."  *Docket #17,* Exhibit A, ¶3.  After Plaintiff stated that he had hurt his back and could not walk, Cregg states that he "radioed health services," receiving the response that Plaintiff should be "transported to Health Services for evaluation and treatment." *Id.*  Cregg states that he procured a wheelchair, but Plaintiff "was uncooperative . . . acting as dead weight when staff attempted to place him in the wheelchair." *Id.*  Cregg then procured a flat bed cart, placed Plaintiff on the cart, and transported him to Health Services.  *Id.*"

*Docket #24* at 10.

This Court noted that Plaintiff did not dispute that officers  (1) came to his aid after

> "[T]he Complaint does not include factual allegations supporting  the claims of equal protection, substantive due process, First Amendment violations, or a  civil conspiracy.   Plaintiff's factual allegations, dealing exclusively with inadequate and/or delayed medical treatment are construed  as Eighth Amendment claims."

*Docket 24* at 8-9.

-5-

observing that he had fallen (2) radioed for medical assistance (3) procured a wheelchair, then later, a flat bed cart and (4) transported him to Health Services. *Id.* Plaintiff does not allege that the unknown officers were deliberately indifferent to his condition. Even assuming that his allegation that Cregg behaved "callous[ly]" can be imputed to the unknown officers, Plaintiff does not allege that any of the officers attempted to delay or withhold treatment. As such, claims against the unknown officers, construed under the Eighth Amendment, are subject to dismissal. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

### b. Unknown Nurses

Claims against "unknown nurses" should also be dismissed. Plaintiff alleges that correctional officers attending to him at the time of his fall radioed health services to which an "unidentified nurse" replied "'we're not coming out in that rain, bring the prisoner to health services.'" *Complaint* at ¶3. Assuming the truth of this claim, Plaintiff fails to allege that the unknown nurse's order to have him transported to health services was motivated by deliberate indifference or that she perceived, then disregarded a risk to his well-being. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff was in fact taken promptly to health services for examination. As such, claims against the unknown nurse(s) must be dismissed.

Finally, I note that Plaintiff names "Unknown Medical Doctor(s) as an individual in his/her official capacity as Medical Doctor(s) on duty [at] LRF." *Complaint* at pg. 7.

However, the Complaint's factual allegations contain no mention of personal involvement by a medical doctor. Assuming that Plaintiff claims only supervisory liability by the unknown doctor(s), this claim is likewise dismissible.[2] *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

### c. Defendant Spitters

Defendant Spitters, a physician's assistant employed by Correctional Medical Services, is mentioned twice in the Complaint's factual allegations**.** First, Plaintiff claims that after being taken to segregation, "Plaintiff was visited by Health Services staff Daniel Spitters, P.A., while in segregation due to Plaintiff[s] inability to physically move, experiencing excruciating pain and discomfort. Plaintiff remained on the segregation floor with urine noted about him. Plaintiff[] remained lying in his human waste for approximately 5-7 hours . . . ." *Complaint* at ¶5.

The allegation that Plaintiff was forced to lie in his own waste for five to seven hours as a result at least in part of Spitter's neglect is contradicted by now dismissed Defendant Evans affidavit stating that "Health Services continued to evaluate [Plaintiff] from the time he was placed in segregation." *Docket #17,* Exhibit D at ¶5. Further, Evans' affidavit states that he, along with a nurse and another officer, entered Plaintiff's cell at approximately 11:35

---

[2] The absence of an underlying constitutional violation would extinguish this claim, even assuming the Complaint were construed to allege an unconstitutional policy or practice by the MDOC.

a.m. - indicating that at most, Plaintiff lay on the floor for three and a half hours before staff intervened. *Id.* Evan also notes that Plaintiff got up on his bed at 12:00 p.m. and changed clothes, adding that Plaintiff also "had contact with psych services at least three times" between March 12 and 16, 2007. *Id.* Plaintiff's claim that he was placed in the segregation cell, then neglected by the medical staff for several hours is also refuted by a non-defendant nurse's observation that shortly after being placed in segregation, Plaintiff became agitated and used profanity when she offered medical assistance. *Docket #17,* Exhibit C at pg. 4 of 102. Plaintiff's inability to show that treatment was withheld in the hours following his segregation placement extinguishes claims that Spitters (or any other medical staff members) was deliberately indifferent to his condition during the same period.

The Complaint's second reference to Spitters states only that on the fifth day of his segregation, Spitters, along with now-dismissed Deputy Warden Smith, a psychologist, and other unidentified staff" came to a "unified consensus" that a misconduct ticket would be withdrawn and that he would be released into the general population. *Id.* at ¶6. That allegation does not state an Eighth Amendment or any other constitutional violation. Accordingly, claims against Spitters in his personal capacity should be dismissed.

### B. Official Capacity Claims

Generally, claims against defendants in their *official* capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis of the immunity granted by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491

U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Under *Will,* claims for monetary damages against present Defendants in their official capacities are barred.

Plaintiff's requests for injunctive relief would arguably preserve his official capacity claims.  "[Eleventh Amendment] immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908).  The proposed injunctive relief consists of prohibiting now dismissed Defendant Bethune from interfering with his First Amendment access to the courts rights, "retaining" his legal materials, and denying his "meaningful right" to future medical treatment.  *Complaint* at 10-11.  Plaintiff, however, makes no showing that any of the Defendants have sought to deny his right to access the courts or future medical treatment.  Plaintiff has done nothing more than offer his belief that at some unspecified time in the future, the Defendants *might* take some action that *may* infringe on his constitutional rights.  The law is clear that injunctive relief should not issue where the claimed future damage is speculative or may never occur.  *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).  The fact that the injunctive requests are wholly dismissible defeats Plaintiff's claims against Defendants in their official capacities.

## IV.  CONCLUSION

For these reasons, I recommend that the district court dismiss remaining Defendants

Spitters, "Unknown" Correction Officers, Medical Doctor(s), and Nurses *sua sponte* pursuant to 28 U.S.C. §1915(e)(2)(B).

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

-10-

Dated:  September 14, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 14, 2009.


                                        s/Susan Jefferson
                                        Case Manager